UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    555 Fourth St., N.W.<br>    Washington, D.C.  20530<br><br>                Plaintiff,<br><br>                v.<br><br>$3,484.70 IN UNITED STATES CURRENCY,<br><br>                and<br><br>TWO WESTERN UNION MONEY ORDERS<br>VALUED AT $2,000,<br><br>                and<br><br>ONE TOSHIBA A205-S4587 LAPTOP,<br><br>                and<br><br>ONE HP PAVILION DV6000 LAPTOP,<br><br>                Defendants. | )<br>)<br>)<br>)<br>) Civil Action No.: 08-CV-571 (CKK)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**AMENDED VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

Plaintiff, United States of America, by and through its attorney, the United States Attorney for the District of Columbia, brings this Amended Complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Supplemental Rules for Certain Admiralty and Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules"):

**NATURE OF THE ACTION AND DEFENDANT *IN REM***

1.  This is a civil action, *in rem*, to forfeit and condemn to the use and benefit of the United States of America the following property:  $3,484.70 in U.S. currency, two Western

Union Money Orders valued at $2,000, one Toshiba A205-S4587 laptop, and one HP Pavilion dv6000 laptop ("defendants"), through enforcement of 18 U.S.C. § 981(a)(1)(A), which provides for forfeiture of any property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956, 1957 and/or 1960 (money laundering), or any property traceable to such property.  All of the defendant property was , seized on or about October 10, 2007, from a specific address located in the 3500 block of Olive Branch Drive, Silver Spring, MD 20904.

     2.  This civil action, *in rem*, is also brought to enforce 18 U.S.C. § 981(a)(1)(C) (incorporating by reference 18 U.S.C. § 1956(c)(7)), which provides for forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 666 (theft or bribery concerning programs receiving Federal funds).

### JURISDICTION, VENUE, AND GOVERNING LAW

     3.  This Court has original jurisdiction of this civil action by virtue of 28 U.S.C. § 1345 because it has been commenced by the United States, and by virtue of 28 U.S.C. § 1355(a), because it is an action for the recovery and enforcement of a forfeiture under an Act of Congress. Venue is proper in this district by virtue of 28 U.S.C. § 1355(b)(1) because this is a forfeiture action or proceeding brought in the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred.

     4.  This civil action *in rem* for forfeiture is governed by 18 U.S.C. § 981, 18 U.S.C. § 983, and Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

**STATEMENT OF FACTS**

5. On October 10, 2007, a Federal search warrant issued by the District Court for the District of Columbia, was executed by law enforcement at a specific address in the 3500 block of Olive Branch Drive, Silver Spring, MD 20904, and after Marcia Anderson ("Anderson") was arrested for stealing, embezzling or obtaining by fraud, funds in excess of $5,000 from an entity that receives Federal funds of $10,000 or more in any one year period, the Washington Metro Area Transit Authority ("WMATA"), in violation of 18 U.S.C. § 666.

6. WMATA is an organization or agency that was created to operate the regional transportation system in the National Capital area. WMATA's rail and bus serve a population of over three million people and has a transit zone which covers the District of Columbia, suburban Maryland, and Northern Virginia.

7. For over ten years, WMATA's headquarters has been located at 600 Fifth Street N.W., Washington, D.C. WMATA has been an agency or organization that receives in any one year period benefits in excess of $10,000 under a Federal program.

8. Anderson was employed by WMATA as a supervisor in the transit sales offices.

9. Anderson's annual salary from WMATA for 2004-2007 was approximately $53,000.

10. From on or about January, 2004 to the present, Anderson used her position as a supervisor in the WMATA transit sales offices to gain access to funds collected by WMATA employees, and to steal or embezzle large amounts of cash on a regular basis.

11. Anderson worked at three different sales offices: the WMATA bus station located at 4615 14th Street N.W. ("NGB"), the sales office at 17 M Street S.E., and the sales office in the WMATA subway station known as "Metro Center" in the District of Columbia, and stole cash,

sometimes as much as $2,000 a day, and removed it from WMATA premises on her person for her own use.

12. WMATA maintains sales offices in the District of Columbia in order to sell "Metro Fare Media" to the commuting public.

13. Metro Fare Media refers to bus tokens, student passes, senior citizen passes, and Metro Fare Cards ("Metrocheks"). Metrocheks are transit cards which have Metro fare balances electronically programed onto them.

14. Each sales office is operated by a transit sales clerk who engages in individual sales transactions with customers at a walk-up window. A transit sales clerk can accept either cash or Metrochecks for payment of Metro Fare Media.

15. Anderson's duties included ensuring that daily WMATA Point of Sale (POS) customer cash purchases and Metrocheks purchases reconciled with transit sales clerks' cashiers' balance reports. Anderson was supposed to verify the transactions from the sale drawers of WMATA transit sales clerks, which contain both cash sales and Metrocheks.

16. Anderson supervised and verified the sale drawers of over twenty WMATA employees.

17. Anderson had access to WMATA's drop boxes, cash drawers, and Metrocheks.

18. In order to avoid detection by WMATA of the theft of cash, Anderson supplemented the cash loss from the transit sales clerks' drawers with Metrocheks that she received from another WMATA employee. Through this scheme, Anderson ensured that the daily cash received and Metrocheks balanced. She was therefore, able to avoid detection by WMATA for a time.

19. An audit by a WMATA contractor of Anderson's computer activities regarding the records of Metro Fare media sales under her supervision, and the amount of cash received at the sales offices under her supervision, revealed that Anderson made regular changes to transit sales clerks' computer entries after their shifts. Anderson would routinely increase the figures for Metrochecks and decrease the amount of cash received by the transit sales clerks. During the 18 months preceding October 2007, and just from the sales office located at 4615 Fourteenth Street, N.W., the audit revealed that Anderson deleted approximately $60,000 from transit sale clerks' "cash" column in the computer system.

20. A review of Anderson's SunTrust bank account #xxxxxxxxxx6295 revealed that from January 12, 2004 until June 1, 2007, there were routine and regular unexplainable deposits, totaling approximately $312,616.45, which were over and above the direct deposit of her salary from WMATA.

21. Of the $312,616.45 in unexplainable deposits, approximately $90,249.38 were deposits in the form of money orders or bank checks made out to Anderson, mostly in rounded dollar amounts.

22. Of the $312,616.45 in unexplainable deposits, approximately $186,083.36 was in the form of cash deposits, the majority of the cash deposits were under $2,000.00 each.

23. A comparison of WMATA's computer records and cash reports submitted by transit sales clerks revealed that from on or about September 20, 2007 through September 24, 2007, Anderson removed $2,907.50 in cash from WMATA, and decreased the amount of cash collected at the sales office in WMATA's records.

24. On September 25, 2007, Anderson purchased two Western Union money orders at

the Check Cash Depot located at 10533 Baltimore Avenue, Beltsville, Maryland. These two money orders, valued at $2,000.00, were later recovered from Anderson's purse pursuant to the search warrant.

25. A comparison of WMATA's computer records and cash reports submitted by transit sales clerks revealed that from on or about October 5, 2007 through October 9, 2007, Anderson removed $2,179.00 in cash from WMATA, and decreased the amount of cash collected at the sales office in WMATA's records.

26. Of the $3,484.70 in U.S. currency was seized pursuant to the search warrant, $3,150.00 in U.S. currency was recovered from Anderson's purse, and $344.70 in U.S. currency was found in a closet in Anderson's bedroom.

27. One Toshiba A205-S4587 laptop and one HP Pavilion dv6000 laptop were recovered from Anderson's residence during the search warrant.

28. According to Circuit City's sales records, on or about April 26, 2007, Anderson purchased a Toshiba A205-S4587 laptop for $949.22. Anderson paid for the laptop with Chase Visa credit card #xxxxxxxx1905. On or about May 14, 2007, Anderson made a payment to Chase Visa credit card in the amount of $2,000.00 from SunTrust account #xxxxxxxx6195.

29. According to Circuit City's sales records, on or about April 27, 2007, Anderson purchased a HP Pavilion dv600 laptop for $1,149.99. Anderson paid for the laptop with American Express card #xxxxxxxx3007. On or about May 18, 2007, Anderson made a payment to American Express in the amount of $2,300.00 from SunTrust account #xxxxxxxx6195.

## COUNT ONE

30. The factual statements made in paragraphs 1 through 29 are re-alleged and incorporated by reference herein.

31. The defendants, two Western Union Money Orders valued at $2,000, one Toshiba A205-S4587 laptop, and one HP Pavilion dv6000 laptop are subject to forfeiture because they were involved in a "financial transaction" as that term is defined by 18 U.S.C. § 1956(c)(4), the purpose of which was to conceal or disguise the nature, location, source, ownership or control of the proceeds of theft concerning programs receiving Federal funds (18 U.S.C. § 666), a "specified unlawful activity" as that term is defined by 18 U.S.C. § 1956(c)(7).

32. As such, the defendants were involved in money laundering transactions in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and are, therefore, subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

## COUNT TWO

33. The factual statements made in paragraphs 1 through 29 are re-alleged and incorporated by reference herein.

34. The defendants, $3,484,70, two Western Union Money Orders valued at $2,000, one Toshiba A205-S4587 laptop, and one HP Pavilion dv6000 laptop, are subject to forfeiture because they represent or are traceable to the gross receipts obtained, directly or indirectly, from a violation of 18 U.S.C. § 666(a)(1) (relating to Federal program fraud).

35. As such, the defendants are, therefore, subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C)(incorporating 18 U.S.C. § 1957(c)(7).

WHEREFORE, the plaintiff prays that, as to the above-referenced defendants, process issue according to law; that, pursuant to law, notice be provided to all interested parties to appear and show cause why the forfeiture should not be decreed and the defendants be condemned as forfeited to the United States of America; and for such other and further relief as this Court may deem just, necessary and proper.

Respectfully submitted,

\_/s/_____
JEFFREY TAYLOR
UNITED STATES ATTORNEY
District of Columbia Bar No. 498610


\_/s/_____
WILLIAM R. COWDEN
Assistant United States Attorney
District of Columbia Bar No. 426301


\_/s/_____
DIANE G. LUCAS,
Assistant  United States Attorney
District of Columbia Bar No. 443610
555 4th St., N.W., Room 4822
Washington, D.C. 20530
(202) 514-7912
Diane.Lucas@usdoj.gov

## **VERIFICATION**

     I, Maria E. Couvillon, United States Postal Inspector, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing Verified Complaint for Forfeiture *In Rem* is based upon reports and information known to me or furnished to me by law enforcement agents and that everything contained in this Complaint is true and correct to the best of my knowledge and belief.

     Executed on this   3rd   day of April, 2008.

                                                                               /s/_____
                                                                               Maria E. Couvillon
                                                                               United States Postal Inspector
                                                                               United States Postal Inspection Service